207 N.J. Super. 363 (1986)
504 A.2d 679
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES HODGE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1985.
Decided January 23, 1986.
*364 Before Judges KING, O'BRIEN and SIMPSON.
James L. Jukes, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney).
Christopher G. Bubb, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
The history of this case appears in State v. Hodge, 95 N.J. 369 (1984); see State v. Roth, 95 N.J. 334 (1984). Defendant pled guilty to aggravated sexual assault in violation of N.J.S.A. 2C:14-2(a). He admitted acts of sexual intercourse with his step-daughter, age 13, over the period of a year between July 1978 and June 1979. 95 N.J. at 371. Defendant was arrested in July 1980. The Code makes sexual contact of this sort a crime of the first-degree when the victim is 13 to 16 years of age.
The Supreme Court summarized the relevant sentencing data in this way.
Defendant was a first offender, employed full-time and was supporting his wife and their natural daughter. The presentence report recommended that despite his status as a first offender, defendant should be imprisoned, in view of the victim's youth. In addition to the presentence report, the trial judge consulted a report from the Adult Diagnostic and Treatment Center, furnished under N.J.S.A. 2C:47-2, and reviewed interviews with the defendant's neighbors and doctors' evaluations.

*365 The court formulated the sentence by balancing the aggravating and mitigating factors listed in N.J.S.A. 2C:44-1(a) and (b). The aggravating factors were the extreme gravity of the offense and the victim's age. The mitigating circumstances included the facts that defendant was a first offender and the forbidden conduct was unlikely to reoccur; defendant was likely to respond favorably to probationary treatment, was regularly employed, supported a family, and was well thought of by his peers; and the fact that the effect of imprisonment on his family would be severe. [State v. Hodge, 95 N.J. at 372].
Because the sentencing standards embraced by the Code of Criminal Justice "were not applied" appellant Hodge's original sentence was set aside and the case was remanded for resentencing.
On resentencing a different judge than the original sentencing judge imposed a 15-year term on the single count to which defendant pled guilty. This is the presumptive term for a first-degree sexual assault. He also imposed a $1,000 fine. The maximum is 20 years. N.J.S.A. 2C:43-6(a)(1).
At the time of resentencing the relevant factors remained the same as described by the Supreme Court. Defense counsel asked that the judge reduce the charge to a second-degree offense for sentencing purposes. N.J.S.A. 2C:44-1(f)(2). In cases "where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands" the judge may sentence defendant to an appropriate term for a crime one degree lower than that for which he was convicted. Ibid. The State urged that the presumptive 15-year term be imposed.
The sentencing judge gave these reasons when sentencing defendant on March 26, 1984.
This crime is a crime of the first degree. Here the crime was, in my opinion, egregious involving a victim who was then 13 years of age. And you were the stepfather in that household. While no force has been shown to have occurred, the silent abuse inflicted upon this young female child threatens in my opinion the fabric of society.
As the Supreme Court has indicated, punishment must fit the crime and not the criminal. Here this sentence reflects primarily the severity of the crime as the diagnostic center examination indicates that you do not come within the purview of the Sex Offender's Act.

*366 The aggravating circumstances include the nature and circumstances of this offense involving a 13 year old girl and her stepfather in their home over an extended period of time. These were, in my opinion, depraved acts by a substitute parent. The extreme gravity and the seriousness of the harm inflicted on the 13 year old victim is another aggravating circumstance.
As a sequel of these crimes, she left the home to start a new life at the age of 13. You either knew or should have known that the victim was particularly vulnerable due to her extreme youth.
There is, in my opinion, a potential risk that you will commit another offense. And there is a very strong need to deter you and others from violating the law.
In mitigation, this is your first offense at age 38. Your conduct was the result of certain circumstances unlikely to reoccur with this specific victim. And you are likely to respond affirmatively to probationary treatment. However, the sentence, the severity of this crime is the single most important factor in this sentence.
This sentence today is designed to punish, designed to deter you and others from performing acts of child abuse and to protect the public, especially young children from child abusers.
Rehabilitation, if it is to occur, must now be in a custodial setting.
This appeal requires us to evaluate the 15-year State prison sentence imposed on resentencing. The original sentence imposed in October 1981 was 63 days in the county jail, five-years probation with a condition of psychiatric care, and fines of $2,525. Hodge, 95 N.J. at 372. The disparity between these two sentences imposed by two different judges from the same county in the identical case suggests the subjective quality of the problem confronting us.
The statute directs us in the circumstance to weigh the mitigating and aggravating factors and act "where the interest of justice demands." N.J.S.A. 2C:44-1(f)(2). The Legislature has given the appellate courts of this State the power of appellate review of sentences. The statute says that we "shall specifically have the authority to review findings of fact by the sentencing court in support of its findings of aggravating and mitigating circumstances and to modify the defendant's sentence" where they are not "fairly supported by the record." N.J.S.A. 2C:44-7. The Supreme Court has cautioned us to act only when the judicial conscience is shocked. State v. Roth, 95 N.J. at 365.
*367 We conclude that the mitigating circumstances clearly outweigh the aggravating circumstances in the context of this 15-year sentence. We think that the interests of justice require a reduction of one degree and a sentence of seven years in State prison, the presumptive term for a second-degree offense. N.J.S.A. 2C:44-1(f)(1).
The sentencing judge stressed as aggravating factors (1) the circumstance of the offense involving a 13-year old and her stepfather, (2) the seriousness of the offense and the psychological harm to the girl, (3) the risk of recidivism, and (4) the need for personal and public deterrence.
The age of the victim and the parental status are elements of the offense and thus cannot be aggravating factors. See State v. Yarbough, 100 N.J. 627, 633 (1985) (age of victim and defendant's position of trust made crime first-degree offense). These factors may not be reloaded on the scales as aggravating factors  "the Legislature has already incorporated these factors in rating the crime as one of the first degree." Ibid.
The seriousness of the offense is obvious. "Indeed, it is that very enormity of moral reproach that makes the crime one of the first degree." Id. at 645. But we seriously doubt on this record that recidivism is probable. N.J.S.A. 2C:44-1(b)(8); N.J.S.A. 2C:44-1(b)(9). We also conclude that the goals of personal and public deterrence from this kind of conduct will be adequately addressed by a seven-year term of incarceration in the state prison.
The most extensive recent academic study of this problem which has come to our attention is Herman and Wilcox, "An Economic Analysis of Incest: Prohibition, Behavior, and Punishment," 25 St. Louis U.L.J. 735 (1982). This study was based on the best pool of available data, a study of prosecutions for incest in England and Wales since 1908 when punishment for incestuous conduct was removed from the ecclesiastic jurisdiction to the law courts and criminalized by Act of Parliament. *368 Id. at 755. This data is much more complete than any available in this country. Id. at 760. The sentencing data discloses a significantly lower range of punishment than the New Jersey data which has been made available to us. The authors reported as follows on the British material.
The question is whether the severity of punishment and the probability of conviction act as a deterrent to incestuous behavior. If they do, the question then becomes which one has the greater impact. The reports of incest behavior and legal sanctioning from England and Wales are instructive. The range of sentences imposed generally run from the maximum of seven years to an effective sentence of zero years in cases of probation or suspended sentence. The average sentence of those imprisoned shows a consistent sanction of something slightly in excess of two years. The estimated average sentence of those imprisoned from 1910 to 1970 at ten year intervals is as follows:

 TABLE IV (K)
 1910  3.5 [1911 at 2.4]
 1920  1.8
 1930  2.5
 1940  [not reported during war years]
 1950  3.0
 1960  2.0
 1970  2.3

The average sentences of all those convicted likewise showed a consistency, averaging something in excess of one year.
Median sentences fluctuated between two and three years, but were at their lowest average during the 1920s when they ranged from one to three years. The median sentence for all those convicted revealed a very strong consistency, generally being at 1.5 years of imprisonment.
The percentage of those convicted of incest who were sentenced to a severe penalty, that being one in excess of two years, fluctuated from 40% to 11%, but generally showed a decline in the period after 1950, never being in excess of 25%. [Id. at 764-765].
* * * * * * * *
... The data used in this study shows that rarely was the average sentence of those convicted more than two years. [Id. at 765].
The study's final conclusion was: "This study supports the theoretical claim that the greater likelihood of prosecution and conviction, rather than the greater severity of penalty, will have greater deterrent effect on potential violators." Id. at 768.
On the mitigating side, the original and most recent addendum to the presentence report show that defendant, his wife *369 and their natural daughter presently experience a normal, supportive home life. At age 38 defendant has had no previous or subsequent criminal or disorderly offenses, except this one. N.J.S.A. 2C:44-1(b)(7). He appears in every respect, except for this situation, to be an average citizen. The Adult Diagnostic and Treatment Center (Avenel) report shows that defendant was "extremely remorseful about what happened." The Avenel team reported that defendant showed no "compulsive type of psychosexuality" and did not fall "under the purview of the New Jersey Sex Offender Act." If the examination at Avenel had revealed that defendant's conduct "was characterized by a pattern of repetitive, compulsory behavior" he could have been sentenced to Avenel for specialized treatment during his custodial term. N.J.S.A. 2C:47-3. This is additional evidence to us that recidivism is unlikely and personal deterrence of defendant is not a substantial factor in the equation.
Imprisonment will undoubtedly entail excessive hardship on defendant and his dependents. See N.J.S.A. 2C:44-1(b)(11). Defendant has cooperated with law enforcement authorities and given full statements to them. N.J.S.A. 2C:44-1(b)(12). The presentence report prepared by the probation department stated that "defendant is particularly likely to respond affirmatively to probationary treatment." The second sentencing judge agreed with this conclusion.
In addition to the mitigating factors, we must be mindful of our duty under the statute to consider reduction of the degree of the crime for sentencing purposes "where the interests of justice demands." We need no legal authority to remark that justice demands at least a semblance of equality under the law. Gross disparity in treatment is antithetical to any notion of equal justice. Indeed the Legislature expressly states one of the "general purposes of the provisions governing the sentencing of offenders" is to "safeguard [them] against excessive, disproportionate or arbitrary punishment." N.J.S.A. 2C:1-2(b)(4). The Court has stated: "A judge who inflexibly sentences *370 at the top of the range does the same injustice as one who tends to the opposite extreme." Hodge, 95 N.J. at 380.
Data on sentences for 1983 and 1985 for first-offender convictions similar to this one, multiple episodes of nonforceful incest with a child 13 or under by a parent or other person in authority where the Avenel evaluation reports the offender is not deemed repetitive and compulsive, have been made available to us from the Administrative Office of the Courts by the Criminal Practice Section. The data for 1985, available for the first three quarters, shows 23 cases, all but three receiving custodial terms. Interpretation of this data shows that a seven-year sentence is consistent with and typical of the mean or average sentence received by similar first offenders. In 1983 of 37 offenses, 32 received custodial terms and five received probationary terms. The median or mid-point sentence was seven years, i.e., one-half of the sentences were more severe than seven years; one-half were less severe. A 15-year sentence would be at the high end of the severity scale for the year 1983.[1]
As we interpret the sentencing data available to us for both 1983 and 1985, a seven-year term places this defendant at the mean or midway position on the punitive scale. Our Supreme Court has said in this very case "that there can be no justice without a predictable degree of uniformity in sentencing." Hodge, 95 N.J. at 379, and "tragic disparity in sentences" is undesirable and "evenhanded justice" the goal. Ibid. Based on all of the expressed considerations we think that the 15-year sentence imposed was too extreme.
We exercise our original jurisdiction to reduce the offense to second-degree crime for sentencing purposes and impose a *371 sentence of seven years in the New Jersey State Prison. R. 2:10-3.
The matter is reversed for correction of the judgment.
NOTES
[1] The 1983 data probably includes several multiple offenders and persons classified by Avenel as repetitive and compulsive. The 1984 data was not available.