241 N.J. Super. 482 (1990)
575 A.2d 504
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
YUCEL CENGIZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1990.
Decided June 1, 1990.
*484 Before Judges SHEBELL, BAIME and KEEFE.
Robert Leotti argued the cause for appellant (A.J. Fusco, Jr., attorney; Joseph A. Ferrante, on the brief).
Kathleen P. Holly, Assistant Prosecutor, argued the cause for respondent (Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney; Kathleen P. Holly, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D., writing for the majority but dissenting in part.
In this appeal defendant Yucel Cengiz asserts that portions of N.J.S.A. 2C:35-12 and 14 are constitutionally infirm because under these provisions a judge is without power to grant relief from the mandatory sentencing requirement of N.J.S.A. 2C:35-7 without prosecutorial consent. The majority of this court has declined to consider this issue. We are in agreement, however, that the case should be remanded to the Law Division in order to determine if the defendant had an agreement with the prosecutor regarding relief from the mandatory sentencing provisions and whether the prosecutor breached that agreement if it did in fact exist.
Appellant was indicted and pleaded guilty to distribution of a controlled dangerous substance, cocaine (N.J.S.A. 2C:35-5a(1)), conspiracy to distribute cocaine (N.J.S.A. 2C:5-2 and 2C:35-5a(1)) and distribution of cocaine within 1,000 feet of a school (N.J.S.A. 2C:35-7).
The sentencing judge merged the count for conspiracy to distribute cocaine with the count for distribution. On the merged conviction defendant was sentenced to 5 years imprisonment. On the count charging distribution of cocaine within 1,000 feet of a school defendant was sentenced to a concurrent *485 5-year term of imprisonment with 3 years of parole ineligibility under the mandatory sentencing provisions of N.J.S.A. 2C:35-7. Also imposed were a $1,000 fine for distributing cocaine within 1,000 feet of a school, $2,000 in drug enforcement penalties, $100 in laboratory fees, and $60 Violent Crimes Compensation Board penalties.
Defendant makes the following legal arguments in his appellate brief:

POINT I: DEFENDANT-APPELLANT HAS BEEN DENIED DUE PROCESS OF LAW BY THE PROSECUTOR'S ARBITRARY DECISION NOT TO JOIN DEFENDANT-APPELLANT IN OBTAINING A PROBATIONARY, NON-INCARCERATING SENTENCE PURSUANT TO N.J.S.A. 2C:35-12 AND N.J.S.A. 2C:35-14 AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
....

POINT II: DEFENDANT-APPELLANT SHOULD BE GRANTED A NEW TRIAL IN THE INTEREST OF JUSTICE, BECAUSE A MIS-CARRIAGE OF JUSTICE RESULTED FROM THE FAILURE OF DEFENDANT-APPELLANT'S TRIAL COUNSEL TO EFFECTIVELY REPRESENT THE DEFENDANT-APPELLANT, THEREBY VIOLATING DEFENDANT-APPELLANT'S FUNDAMENTAL STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
Defendant in pleading guilty to the offenses in question admitted that he sold two packages of cocaine to undercover investigators from the Somerset County Prosecutor's Office at his work location within 1,000 feet of a school. Defendant's guilty plea to the indictment was accepted after he acknowledged in open court that the prosecutor had made no promises in exchange for his guilty plea and that there was no plea agreement. Defendant's counsel did, however, inform the court that defendant planned to raise as an issue at sentencing that he cooperated with the State in certain undercover investigations. This cooperation defendant asserted was in response to the State's promise of leniency, and therefore, he expected the prosecutor's recommendation that defendant not be subject to the mandatory minimum sentence and period of parole ineligibility *486 otherwise required by N.J.S.A. 2C:35-7. See N.J.S.A. 2C:35-12 and 14.
At sentencing, defendant raised several objections to the failure of the prosecutor to take action on defendant's behalf to permit the court to be relieved of the mandatory minimum sentencing provisions of N.J.S.A. 2C:35-7. Defendant further protested that N.J.S.A. 2C:35-12 and 14 were constitutionally flawed. Defendant also requested a hearing on the issue of whether he cooperated sufficiently with the police authorities to warrant an order to compel the prosecution to consent to relief from the mandatory sentencing provisions. His request was summarily rejected by the sentencing judge as being beyond the judicial authority granted by the Drug Reform Act.
In his brief on appeal, defendant attacks the constitutional validity of sections 12 and 14 of N.J.S.A. 2C:35 as violating the due process protections of both the Federal and State Constitutions, as being void for vagueness, and as violating the separation of powers of the three branches of government, presumably under the New Jersey Constitution. See N.J. Const. (1947), Art. III, par. 1 (Branches of Government). Factually, defendant continues to focus upon his cooperation "with the relevant authorities to the highest extent possible" and argues that "the prosecutor arbitrarily decided he did not provide enough `information' and therefore he would not join in his application for probationary treatment."
N.J.S.A. 2C:35-12 provides that whenever the Drug Reform Act specifies a mandatory sentence of imprisonment or a minimum parole ineligibility term, the court is obligated to impose the prescribed mandatory sentence unless the defendant has the benefit of a negotiated agreement with the prosecution either before defendant pleaded guilty, or if the case is tried, the defendant must have entered into a post-conviction agreement providing for a lesser sentence or lesser period of parole ineligibility. See State v. Todd, 238 N.J. Super. 445, 449-52, 570 A.2d 20 (App.Div. 1990); State v. Brown, 227 N.J. Super. *487 429, 439-41, 547 A.2d 743 (Law Div. 1988); State v. Morales, 224 N.J. Super. 72, 86, 539 A.2d 769 (Law Div. 1987). Further, even where there is an agreement, the court is barred by the statute from imposing a lesser term of imprisonment, period of parole ineligibility or fine than that expressly agreed to by the prosecutor. N.J.S.A. 2C:35-12; Brown, 227 N.J. Super. at 439-41, 547 A.2d 743 (court questions the constitutionality of the statutory requirement that a court may not impose a lesser sentence than that provided for in a post-conviction agreement). A similar restraint upon the powers of the court is found in N.J.S.A. 2C:35-14b, which prohibits the court from placing a defendant on probation for treatment of drug dependency where there has been a violation of N.J.S.A. 2C:35-7, unless the prosecutor joins in defendant's application for probation and treatment.
Defendant's appellate brief was filed before the decision of another panel of this court in State v. Todd, 238 N.J. Super. 445, 570 A.2d 20 (App.Div. 1990). In Todd the court considered the challenges to sections 12 and 14 with particular emphasis on the violations of separation of powers alleged. The Todd court outlined in detail similar constitutional attacks made in other jurisdictions against statutes that purported to "elevate prosecutorial discretion over judicial discretion in the fixing of criminal sentences." Id. at 452, 453-58, 570 A.2d 20. We do not believe it is necessary to replicate that thorough discussion here.
The Todd court concluded that it was able to uphold the constitutional validity of N.J.S.A. 2C:35-12 and 14 based on the assumption that the Legislature intended that the courts retain their role of reviewing prosecutorial decisions regarding a defendant's entry into diversionary-type programs. Todd, 238 N.J. Super. at 461-62, 570 A.2d 20, citing Right to Choose v. Byrne, 91 N.J. 287, 311, 450 A.2d 925 (1982); see also State v. Leonardis (Leonardis I), 71 N.J. 85, 363 A.2d 321 (1976), on reh'g, 73 N.J. 360, 375 A.2d 607 (1977). The court was concerned with whether N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14 could "reasonably ... be interpreted in a manner that preserves *488 the ultimate sentencing decision to the court rather than the prosecutor." 238 N.J. Super. at 461, 570 A.2d 20. Thus, it stated that it must be assumed "the Legislature fully intended to reserve to the judiciary the power to approve or reject any agreement between the defendant and the State." Id. at 462, 570 A.2d 20. It held that the court "may review for the patent and gross abuse of the exercise of the prosecutor's discretion in the first instance if convinced that the interests of justice will not be served by accepting it in that particular case." Ibid. The court concluded that "[b]y so interpreting [N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14] the defendant's separation of powers argument fails." Ibid.

I(a).
Here, the sentencing judge rejected the defendant's request for a hearing on whether the determination of the prosecutor that there had been less than adequate cooperation was arbitrary. The court made its decision on the basis that the statute did not permit any such inquiry. This position was properly rejected in State v. Todd, 238 N.J. Super. at 462, 570 A.2d 20. As pointed out by the Supreme Court in State v. McCrary, 97 N.J. 132, 142, 478 A.2d 339 (1984), "[h]istorically, a prosecutor has been vested with broad discretionary powers to be exercised in the conscientious discharge of the manifold responsibilities of his office." Nonetheless, these powers are not unlimited. See also State v. Di Frisco, 118 N.J. 253, 265-67, 571 A.2d 914 (1990). We are in accord that defendant is entitled to a remand on the issue of whether the defendant had an agreement with the prosecutor and whether defendant fully performed his part of that agreement. See concurring opinion of Judge Keefe (post at 501, 575 A.2d at 514).

I(b).
I part company with my colleagues' view that we need not consider the remaining issues raised on appeal. A hearing on remand such as we have granted in this case will serve only to *489 satisfy this defendant's due process rights regarding whether the prosecution failed to keep its end of a bargain under an alleged agreement calling for defendant to cooperate. However, the due process rights of a defendant without bargaining power who is unable to get the ear of the prosecutor in seeking to cooperate or to negotiate a plea, post-conviction agreement or consent to a joint application for rehabilitative treatment might well go unsatisfied without expansion of the Todd remedy. In addition, this defendant's right to relief under section 14 goes unrecognized. That right under section 14 is not dependent on a pre-plea agreement. Rather, the Legislature has required that a defendant's application for probation and rehabilitative treatment must be joined in by the prosecutor no matter when the application is made. Under section 12, a post-conviction agreement with the prosecutor is required even after a trial. In the present case defendant asserts that the statutory provisions requiring the prosecutor's agreement violate the constitutional guarantees of due process and separation of powers.
Appellant in Todd raised due process and equal protection arguments in addition to separation of powers violations. Todd, 238 N.J. Super. at 448, 570 A.2d 20. Before proceeding to the due process issues, it is worthwhile to reflect on the Todd court's assertion that defendant's separation of powers argument fails because of the ability of the judiciary to review for the patent and gross abuse of the exercise of the prosecutor's discretion. Id. at 462, 570 A.2d 20. The court's assertion in Todd is based on the tacit assumption that the judiciary is able to recognize what the Legislature intended the criteria to be for a prosecutor entering into a negotiated agreement or a joint application allowing more lenient sentencing of a defendant. Is the prosecution's grace reserved for instances where the State has difficulty in proving its case; or perhaps, where a defendant has cooperated with the State in some investigation or otherwise curried the State's favor; or is it reserved for cases where it can be asserted that the "interests of justice" require *490 leniency? Ibid. Unfortunately, sections 12 and 14 are silent as to any standard for prosecutorial consent.
Although my search has found only a few states whose statutes allow relief from a mandatory sentence based upon a prosecutor's consent, those that do exist all establish a minimal threshold test for the State's agreement. See, e.g., Cal.Penal Code § 1000 (West 1985) (district attorney is required to consider six factors, including defendant's previous record and existence of violence, and must file in writing with the court the basis of determination); N.Y.Penal Law § 65.00 (Consol. 1987) (prosecutor may recommend probation based upon the ground that a defendant has provided material assistance to the prosecution and based on other factors, including interest of justice); Ala. Code § 13A-12-232 (1989) (prosecutor may move sentencing court to reduce or suspend sentence based on substantial assistance by defendant to prosecution); Minn. Stat. § 169.121, subd. 3a(b); Minn. Stat. § 609.11, subd. 8 (prosecutor may move for sentencing without regard to mandatory minimum sentence, but motion must be accompanied by statement of reasons); La. Rev. Stat. Ann. § 40:967 (West 1978) (prosecutor may move for reduced or suspended sentence where defendant cooperates with prosecution).
Several of the aforementioned jurisdictions do not require judicial review of the prosecutor's decision to withhold the recommendation for a lesser sentence. See, e.g., Ala. Code § 13A-12-232 ("Under no circumstances may the judge reduce or suspend the sentence except upon the motion of the prosecuting attorney."); Eldridge v. State, 418 So.2d 203, 207 (Ala. Crim. App. 1982); People v. Eason, 40 N.Y.2d 297, 386 N.Y.S.2d 673, 675-76, 353 N.E.2d 587, 588-89 (1976) (so long as statute does not take away power of sentencing from the courts, there is no constitutional defect); People v. O'Neill, 85 Misc.2d 130, 379 N.Y.S.2d 244, 249 (1975) (court cannot compel prosecutor to recommend probation). However, other states recognize the need for standardized decision-making and review by the courts of such sentence-related prosecutorial decisions. See People v. *491 Navarro, 7 Cal.3d 248, 255, 102 Cal. Rptr. 137, 144, 497 P.2d 481, 488 (1972); State v. Le Compte, 406 So.2d 1300, 1309- 12 (La. 1981), reh'g den., 446 So.2d 314 (La. 1984); State v. Olson, 325 N.W.2d 13, 17-18 (Minn. 1982).
If the sole test is a defendant's cooperation with the State, that is obviously an area where the prosecution has the unique ability to determine whether its expectations have been met, and as stated in Todd, the prosecutor's discretion would be given great deference and only disturbed where there is patent and gross abuse. 238 N.J. Super. at 461-62, 570 A.2d 20; see also U.S. v. Roberts, 726 F. Supp. 1359, 1377 (D.D.C. 1989) (hearing ordered where defendant had burden of showing that adequate assistance was provided to prosecution and that prosecutor's decision was arbitrary and capricious); O'Neill, 85 Misc.2d at 135, 379 N.Y.S.2d at 248-49.
However, even if cooperation is the sole criteria, there will be instances where the prosecutor will not initiate plea negotiations or will refuse to respond to the defendant's request that he be given an opportunity to cooperate. It is obvious that when the State has no difficulty with its proofs it will have little reason to talk with a defendant unless he has something to offer. If a defendant is only peripherally involved in criminal activity, he will probably have little or nothing to offer the State. Paradoxically, a defendant who is deeply involved and well-connected to the criminal world and who has been cunning enough to cover his tracks well, will when accused be in a position where he has much to offer to the State, and the State will have good reason to seek his cooperation.
If the test as to who is to be afforded relief from the mandatory provisions of the Drug Reform Act is based even in part on an "interests of justice" criterion, obviously the former hypothetical defendant and not the latter is the most deserving of leniency. He does not, however, have nearly the same chance of obtaining the prosecutor's recommendation as does the more culpable drug dealer.
*492 In addition, the decision as to where the interests of justice lie is one which has traditionally been reserved to the judiciary. Todd, 238 N.J. Super. at 462, 570 A.2d 20; see also Clowes v. Terminix Intern., Inc., 109 N.J. 575, 588-89, 538 A.2d 794 (1988), quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964); N.J.S.A. 2C:44-1d (court may avoid imprisoning defendant where it finds imprisonment would be a serious injustice); N.J.S.A. 30:4C-61b(3) (in reviewing a DYFS recommendation to place children outside of their homes a court may order a hearing on the matter in the interest of justice). The prosecutor is an adversary and ill-equipped to make that judgment. See Olson, 325 N.W.2d at 19.
These are the kinds of considerations which have caused the defendant to argue on appeal that his due process rights under the Federal and State Constitution have been trampled upon by the shift of the sentencing prerogative from the judge to the prosecutor. There is unquestionably such a shift where the sentencing judge is powerless to grant any relief from the mandatory incarceration and parole ineligibility provisions of the Drug Reform Act without the agreement and/or consent and joint application of the prosecutor. See State v. Warren, 115 N.J. 433, 447-48, 558 A.2d 1312 (1989). See also Le Compte, 406 So.2d at 1311-12; Olson, 325 N.W.2d at 18; People v. Superior Court of San Mateo County (On Tai Ho), 11 Cal.3d 59, 64, 113 Cal. Rptr. 21, 26, 520 P.2d 405, 410 (1974); Navarro, 7 Cal.3d at 255, 102 Cal. Rptr. at 144, 497 P.2d at 488; Roberts, 726 F. Supp. at 1366-68.
I am convinced that a defendant's due process and equal protection rights are threatened where the sentencing and rehabilitative treatment criteria militates in favor of a more culpable defendant being granted leniency from the mandatory sentencing provisions than a defendant who is more justly entitled to a mitigated sentence but has insufficient bargaining power to get the attention of the prosecutor. Prosecutors are not impartial adjudicators; they are adversaries charged with enforcing the Criminal Code. Therefore, they are not attuned *493 to making sentencing decisions based on the interests of justice. See Olson, 325 N.W.2d at 19. But cf. State v. Vigliano, 50 N.J. 51, 60, 232 A.2d 129 (1967) (primary duty of prosecution is not to seek convictions but to see that justice is done).
It is an insufficient remedy that the court may review for patent and gross abuse of exercise of the prosecutor's discretion, as the statute fails to establish procedural safeguards to compel the prosecutor to consider whether to grant consent to a motion for rehabilitative treatment or to negotiate an agreement for deviation from the mandatory sentencing provisions. I do not consider it a sufficient answer that the prosecution in other circumstances can refuse to negotiate a plea with a defendant. In circumstances not involving a mandatory sentence with an escape clause, it is the court which has control of the ultimate sentencing decision. Prosecutorial attempts to limit judicial sentencing authority have been struck down by our Supreme Court. State v. Warren, 115 N.J. 433, 447-49, 558 A.2d 1312 (1989). As noted in State v. Leonardis, 73 N.J. at 369 n. 5, 375 A.2d 607, "it has been repeatedly stated that sentencing is a judicial function. See e.g., State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975); Clifford v. Heller, 63 N.J.L. 105, 42 A. 155 (Sup.Ct. 1899); Jackson v. United States, 338 F. Supp. 7 (D.N.J. 1971), cert. den. 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972); People v. Tenorio, 3 Cal.3d 89, 89 Cal. Rptr. 249, 473 P.2d 993 (1970)."
Moreover, I am satisfied that the Legislature intended that any exceptions to the mandatory sentencing provisions be based in substantial measure on "interests of justice" considerations. See Todd, 238 N.J. Super. at 462, 570 A.2d 20; N.J.S.A. 2C:43-6.2 (Graves Act deviation from mandatory minimum term of imprisonment permitted where imposition "does not serve the interest of justice"); N.J.S.A. 2C:44-1d (court may avoid imprisoning defendant where it finds imprisonment would be a serious injustice). I find this to be consistent with one of the fundamental purposes of sentencing as defined by the Legislature in the Criminal Code: "To safeguard offenders against *494 excessive, disproportionate or arbitrary punishment." N.J.S.A. 2C:1-2b(4); State v. Roth, 95 N.J. 334, 361, 471 A.2d 370 (1984); State v. Hodge, 207 N.J. Super. 363, 369, 504 A.2d 679 (App. Div.), certif. den., 105 N.J. 518, 523 A.2d 163 (1986); Cannel, Criminal Code Annotated, N.J.S.A. 2C:1-2, comment 3.
Thus, a defendant's due process rights are violated by statutory provisions which require a mandatory sentence and provides a safety valve or deviation only in those instances where the prosecutor chooses, without any statutory standards or criteria, to permit the court to grant a lesser sentence or probation. "The fact that the Legislature has acted to provide a remedy [i.e., relief from the mandatory minimum sentence under certain conditions] does not mean that the judicial branch is limited to the boundry lines of strict legislative expression in fashioning or denying remedies in a particular case." State v. Carter, 64 N.J. 382, 392, 316 A.2d 449 (1974), overruled on other grounds by State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975); see also McCrary, 97 N.J. at 140, 478 A.2d 339.
The judiciary's sentencing function is improperly encroached upon by the provisions in question as it is only if the prosecutor agrees to permit the court to enter a lesser sentence or later consideration of rehabilitative treatment that there may be a deviation from the mandatory sentencing provisions of the Drug Reform Act, and yet the statute provides no criteria for exercise of the prosecutor's unprecedented sentencing option, nor any procedure for its initiation or review. N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14. Navarro, 7 Cal.3d at 255, 102 Cal. Rptr. at 144, 497 P.2d at 488. Thus, the court may be compelled to cause two similarly-situated defendants to receive disparate treatment without the court being able to bring about justice and uniformity of sentence where the prosecution, perhaps for reasons of its own expediency and without regard to the interests of justice, decides to join the application for treatment or initiate plea negotiations with one defendant, but not the other. Unlike other situations where the State refuses to plea bargain, the court, under the provisions in question, *495 cannot remedy such disparity without the prosecutor's consent. This represents an improper invasion by the prosecutor into the judicial sphere. See Warren, 115 N.J. at 447-48, 558 A.2d 1312; Olson, 325 N.W.2d at 18; Le Compte, 406 So.2d at 1311. This defect renders the safety valve provisions of sections 12 and 14 constitutionally invalid under the due process and equal protection guarantees of our Federal and State Constitutions, unless they are judicially modified.
I view the problem in this case to be similar to that previously presented to the courts regarding review of prosecutors' determinations concerning entry into Pretrial Intervention Programs (PTI). In State v. Leonardis (Leonardis I), the Supreme Court considered whether a defendant could be denied entry into a PTI without the prosecutor giving a written explanation of his reason for objecting to defendant's entry into the program. 71 N.J. at 113, 363 A.2d 321. The Leonardis I Court noted that one of the chief reasons for the PTI programs was the early identification of defendants who need treatment. Id. at 96, 363 A.2d 321. The Court stressed the need to provide rehabilitation to those defendants who would be most amenable to treatment thus permitting better use of overall resources. Id. at 96-97, 363 A.2d 321. Clearly, N.J.S.A. 2C:35-14 has a related purpose. The Court found that requiring a prosecutor to furnish reasons for his decision furthered accountability by facilitating judicial review. Leonardis I, 71 N.J. at 114-15, 363 A.2d 321. Thus, the Court required prosecutors to provide a statement of reasons regarding any PTI decision. Id. at 122, 363 A.2d 321. See R. 3:28 (Guideline 8).
The Court reheard the Leonardis case in order to clarify its opinion and to consider the issue of separation of powers. State v. Leonardis, 73 N.J. 360, 375 A.2d 607 (1977) (Leonardis II). In the second Leonardis case, the Court stood by its previous decision against a prosecutor having the discretion to deny a defendant entry into PTI without a statement of reasons. Id. at 376-77, 375 A.2d 607. The Court found that "the prosecutor is not immune from the ban against arbitrariness in *496 governmental decision making." Id. at 377, 375 A.2d 607. In both Leonardis I and Leonardis II, the Court based its determination that a prosecutor must state the reason for denial of PTI to a defendant on the fact the prosecutor was performing a quasi-judicial function. Leonardis I, 71 N.J. at 115-16, 363 A.2d 321; Leonardis II, 73 N.J. at 376, 375 A.2d 607. Consequently, although a defendant does not have a right to be placed in PTI, a prosecutor's decision to deny a defendant entry into the PTI program cannot be the result of ad hoc or arbitrary decision. See Leonardis I, 71 N.J. at 116, 121, 363 A.2d 321; Leonardis II, 73 N.J. at 377, 375 A.2d 607. Thus, defendants who seek entry into the PTI program are entitled to procedural protections.
While the drug rehabilitation relief established by N.J.S.A. 2C:35-14 and the PTI program have different origins, their purposes are primarily the same. Both were established to provide rehabilitative treatment to defendants who are amenable to corrective care without incarceration. Compare Leonardis I, 71 N.J. at 96-97, 363 A.2d 321 with N.J.S.A. 2C:35-14a. Although a prosecutor is vested with broad discretion in bringing charges, plea bargaining and approving defendants for PTI, in no case is the prosecutor's discretion unlimited. See Matter of L.Q., 227 N.J. Super. 41, 48, 545 A.2d 792 (App.Div. 1988); State v. Howard, 110 N.J. 113, 123, 539 A.2d 1203 (1988); Leonardis II, 73 N.J. at 381, 375 A.2d 607.
Facially, under N.J.S.A. 2C:35-12 and N.J.S.A. 2C:35-14, the prosecutor can refuse to join a defendant's application for probationary drug rehabilitative treatment without a stated reason and without a possibility for judicial review of that refusal. Not only does this situation impinge on the sentencing discretion of the courts, see Warren, 115 N.J. at 447-49, 558 A.2d 1312, it also denies defendant due process. See Roberts, 726 F. Supp. at 1367. As recognized in Leonardis I, even if a defendant does not have a right to entry into a rehabilitative program, he may be entitled to procedural protections when denial of the privilege of entering such a program would occur. *497 See Leonardis I, 71 N.J. at 116-17, 363 A.2d 321. Thus, by analogy, in accordance with Leonardis I and Leonardis II, defendant here is entitled to a statement of reasons for the prosecutor's decision not to join his application for probationary drug rehabilitative treatment and judicial review of the prosecutor's adverse decision. See Leonardis I, 71 N.J. at 114-16, 121-22, 363 A.2d 321; Leonardis II, 73 N.J. at 381, 375 A.2d 607.
I would conclude that the Legislature intended that the mandatory sentencing provisions of the Drug Reform Act only be applicable if accompanied by valid escape or safety mechanisms to avoid injustice. As presently written, the provisions of sections 12 and 14, intended as safety valves to insure that the interests of justice are properly served in special individual cases, are to my view constitutionally invalid. However, the courts have the ability to apply the legislatively intended standard for deviation from the Drug Reform Act's mandatory sentencing provisions in a manner which will fully protect the court's sentencing authority and a defendant's individual rights and to thereby carry out the legislative prescription of mandatory sentencing. See Byrne, 91 N.J. at 311, 450 A.2d 925.
Pending consideration of possible amendment to court rules by the Supreme Court and recommendations by the Criminal Practice Committee or further judicial review, I would establish the following guidelines for use by defendants seeking relief under N.J.S.A. 2C:35-12 and/or 14 where informal attempts to gain prosecutorial agreement or consent fails:
(1) Defendants should first apply to the appropriate prosecuting agency in an attempt to obtain the required statutory agreement or consent;
(2) A defendant's request for prosecutorial recommendation or consent should be measured according to the standard set forth in N.J.S.A. 2C:43-6.2, i.e., imposition of the mandatory sentencing provisions of N.J.S.A. 2C:35-7 will not serve the interest of justice;
(3) A defendant aggrieved by a prosecutorial decision not to recommend deviation under section 12 or not to join in a motion for probation and treatment under section 14 may move before the assignment judge or designated judge of the vicinage for a Leonardis-type hearing as to whether the prosecutor's *498 rejection or refusal is grossly arbitrary or capricious or a patent abuse of discretion. See 73 N.J. at 382-83, 375 A.2d 607.
My colleagues, however, for the reasons they express in their concurring opinions, find it unnecessary or are otherwise unwilling to join with me beyond the granting of a remand and hearing on whether an agreement existed between the defendant and the prosecutor and whether defendant carried out his obligations under that agreement.

II.
We find it necessary to dispose of the contentions set forth in defendant's Point II of his appellate brief, notwithstanding our remand on Point I(a). Defendant asserts that he was denied effective assistance of counsel because his counsel failed to negotiate a plea agreement, and that counsel's failure to make a motion to set aside defendant's guilty plea denied him the right to trial.
At the defendant's plea hearing, counsel informed the court of defendant's intention to argue at sentencing that he had cooperated with the prosecutor and alternatively that he was entitled to probationary rehabilitative treatment under N.J.S.A. 2C:35-14. The court warned the defendant that if he entered a guilty plea, he would probably be waiving his right to later make arguments regarding the prosecutor's alleged promises of cooperation. Nonetheless, defendant with the advice of counsel decided to enter a guilty plea. After being advised of the adverse consequences a guilty plea could have on defendant's future arguments, defense counsel stated: "[u]nderstood, but, your Honor, assuming he did not enter a guilty plea here today, he would be in a position where he'd go to trial, and, hypothetically, he would be found guilty of all charges and we'd be back to exactly where we are now."
Both defendant and his counsel realized that the State's case was strong and in the words of defense counsel that defendant did not have a "winable case." Accordingly, it appears that the *499 prosecutor was unwilling to enter into plea discussions. Defense counsel's choice to avoid a trial in order to obtain the best possible sentence for his client thus appears to have been a reasonable strategical decision.
Our Supreme Court in State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), adopted the two-prong standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g den., 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), for evaluating claims of ineffective assistance of counsel. Fritz, 105 N.J. at 51-53, 519 A.2d 336. In Strickland the United States Supreme Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. [466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; see also Fritz, 105 N.J. at 52, 519 A.2d 336].
Our Supreme Court has held that the Strickland standard is also applicable to claims made under our state constitution as well. Fritz, 105 N.J. at 58, 519 A.2d 336.
In order to establish ineffective assistance of counsel, defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "There is a strong presumption that counsel's performance falls within the wide range of professional assistance, and defendant bears the burden of proving that counsel's representation was unreasonable." State v. Sloan, 226 N.J. Super. 605, 613, 545 A.2d 230 (App. Div.), certif. den., 113 N.J. 647, 552 A.2d 171 (1988); see also Fritz, 105 N.J. at 52, 519 A.2d 336. The Fritz Court also adopted the rules from United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Reversals following Cronic will usually occur only as a result of complete denial of *500 counsel or as result of a severe deficiency such as not subjecting the State's case to any meaningful adversarial testing. Cronic, 466 U.S. at 659, 104 S.Ct. at 2045, 80 L.Ed.2d at 668.
Here, defendant's counsel determined that the prosecution's case against the defendant was so strong it was advisable for defendant to plead guilty. The decision not to test the prosecution's case is not in itself an indication of ineffective assistance of counsel. This we hold to be true even if a mandatory sentence of incarceration will result. Under the circumstances of this case, it cannot be said that counsel's advice to plead guilty resulted in per se ineffective assistance of counsel. See Fritz, 105 N.J. at 53, 62-63, 519 A.2d 336; Cronic, 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667. Defendant gained the benefit of being able to avoid the stress of trial and to seek leniency from the court at sentencing based upon his cooperation by not putting the State to its proofs unnecessarily. Cf. Warren, 115 N.J. at 443, 558 A.2d 1312.
In addition, in these circumstances we are unable to perceive how defendant can meet the heavy burden of showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; see also Sloan, 226 N.J. Super. at 613, 545 A.2d 230. In summary, there is no indication that defense counsel's failure to negotiate an agreement stemmed from his error or lack of trying, or that a different result would have been achieved if counsel had acted differently. See Fritz, 105 N.J. at 52, 519 A.2d 336.
The defendant also claims that he was denied effective assistance of counsel as a result of counsel's failure to move to set aside his guilty plea. Under R. 3:21-1, a defendant may move to withdraw his plea before sentencing. A court may permit a motion to withdraw a plea after sentencing if it is necessary to correct a manifest injustice. R. 3:21-1; State v. Chung, 210 N.J. Super. 427, 431, 510 A.2d 72 (App.Div. 1986). *501 In determining whether to permit withdrawal of a guilty plea a court considers "the materiality of [a] mistake or omission, the resulting prejudice to defendant, the guilt of defendant, and the manner of entry of the plea." Ibid.
Here, defendant has not shown that if his counsel had moved to withdraw his plea, the result would have been any different. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Chung, 210 N.J. Super. at 433, 510 A.2d 72. Once the sentencing court rejected defendant's argument that he should be placed on probation and into drug rehabilitation, the defendant had no truly viable options other than to appeal.
Defendant does not argue that his counsel did not advise him of the effects of his guilty plea. See Chung, 210 N.J. Super. at 434, 510 A.2d 72. Nor has defendant shown that it was "reasonably probable" that the trial court would have granted defendant's motion to withdraw his plea. Fritz, 105 N.J. at 52, 519 A.2d 336. Moreover, even if defendant had moved for a withdrawal of his plea and the court granted the motion, there is no reason to believe that the ultimate result would have been any different. Thus, defense counsel's failure to move for withdrawal of defendant's plea of guilty does not have the effect of undermining the confidence in the outcome of defendant's case. Ibid.
Affirmed, subject to further hearing on remand as noted in Point I(a) of this opinion.
KEEFE, J.A.D., concurring.
I concur that a remand to the Law Division is warranted in this case. State v. Todd, 238 N.J. Super. 445, 570 A.2d 20 (App.Div. 1990). However, the facts presented in this record require us to go no further in vindicating the defendant's rights than a remand to the Law Division for an evidentiary hearing to determine whether the agreement alleged by the defendant was entered into and, if so, whether defendant in good faith performed his promise. If the judge on remand finds in defendant's *502 favor, a decision then must be made whether the interests of justice will best be served by accepting or rejecting the agreement. In the event that the judge determines that an agreement was made but that it is contrary to the public interest, defendant should be permitted to withdraw his guilty plea and proceed to trial. See State v. Todd, 238 N.J. Super. at 462, 570 A.2d 20.
In my view, an "expansion of the Todd remedy" is unwarranted. It has long been established that an appellate court need not consider an issue that is unnecessary to the appeal. Port Richmond & Bergen Point Ferry Co. v. Freeholders of Hudson County, 82 N.J.L. 536, 82 A. 729 (E. & A. 1912), aff'd 234 U.S. 317, 34 S.Ct. 821, 58 L.Ed. 1330 (1914); Sente v. Mayor & Mun. Coun. of Clifton, 66 N.J. 204, 205, 330 A.2d 321 (1974). Moreover, "[d]eeply embedded in our jurisprudence is the settled principle against resolving disputes in advance of constitutional necessity." State v. Jones, 198 N.J. Super. 553, 559, 487 A.2d 1278 (App.Div. 1985). The secondary issue Judge Shebell would decide is not likely to escape judicial review if not decided today and is not a matter of great public importance. Cf. Matter of Conroy, 98 N.J. 321, 342, 486 A.2d 1209 (1985). "[I]t is dangerous to formulate important precedents without an adequate, wholehearted and controversial presentation of the issue." R. Leflar, Appellate Judicial Opinions, 60 (West 1974) (quoting Note, 53 Harv.L.Rev. 628, 629-30 (1940)). See also Jones, 198 N.J. Super. at 559-60, 487 A.2d 1278. This concern is especially appropriate here because the import of Judge Shebell's decision is to require a prosecutor to plea bargain in certain cases in the "interests of justice" with that decision being made by a judge, not the prosecutor.
Historically, the question of whether plea negotiations should be entertained has been a matter of unfettered prosecutorial discretion. I have found no case law which has compeled a prosecutor to enter into plea negotiations. The current court rule reflects this long history in its provision that "[t]he prosecutor and defense counsel may engage in discussions relating *503 to pleas and sentences, ...." R. 3:9-3(a) (emphasis added). Courts have traditionally only had minor involvement in plea negotiations. State v. Korzenowski, 123 N.J. Super. 454, 303 A.2d 596 (App.Div. 1973), certif. den. 63 N.J. 327, 307 A.2d 100 (1973); R. 3:9-3(c). We have recognized in the past that "[t]he cornerstone of the plea bargain system is the `mutuality of advantage' it affords to both defendant and the State." State v. Taylor, 80 N.J. 353, 361, 403 A.2d 889 (1979). Judge Shebell now suggests that, in certain circumstances where a defendant is facing a jail sentence mandated by the Legislature, a prosecutor may be required to negotiate a plea even when he/she perceives no benefit from an administrative or law enforcement point of view. The issue is a complex and troublesome one. It should be left for another day when we are actually faced with the paradox that Judge Shebell envisions at which time the issue will be more clearly focused and more adequately briefed.
BAIME, J., joins in this concurring opinion.